**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

TIARA YACHTS, INC.,

Plaintiff,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

Defendant.

Civil Action No.: 1:22-cv-603

Judge: Hon. Robert J. Jonker

Magistrate Judge: Hon. Ray Kent

**ORAL ARGUMENT REQUESTED**

**DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER PROHIBITING TWO DEPOSITIONS NOTICED BY PLAINTIFF**

***EXPEDITED CONSIDERATION REQUESTED***

Defendant Blue Cross Blue Shield of Michigan ("BCBSM"), through its undersigned counsel, moves under Fed. R. Civ. P. 26(c) for a protective order to prohibit two depositions that Plaintiff Tiara Yachts, Inc. noticed to obtain information related to claims that the parties have agreed have nominal value. BCBSM makes this request for the reasons stated in its accompanying brief, which is fully incorporated here.

**BCBSM seeks expedited consideration** because the depositions at issue are scheduled for August 25 and 26, 2026. There is thus a significant risk that the relief requested will become moot before the Court reaches a decision on this motion. BCBSM respectfully requests that the Court hold a hearing either by Zoom or in-person by the morning of August 25, 2026 to decide these issues.

Pursuant to W.D. Mich. LCivR 7.1, BCBSM's counsel attempted in good faith to seek concurrence in the relief requested in this motion from Plaintiff Tiara Yachts' counsel via emails on August 20 and 21, 2026. Plaintiff's counsel did not agree to cancel the depositions.

Respectfully submitted,

ALLEN OVERY SHEARMAN STERLING US LLP

By: s/ Daniel Lewis
Daniel Lewis (Adm. in W.D. MI, NY Reg. 4084810)
Jeffrey D. Hoschander (Adm. in W.D. MI, NY Reg. 4496337)
599 Lexington Avenue
New York, NY 10022
Telephone: +1.212.848.4000
Facsimile: +1.202.508.8100
daniel.lewis@aoshearman.com
jeff.hoschander@aoshearman.com

Todd M. Stenerson (P51953)
1101 New York Avenue, NW
Washington, DC 20005
Telephone: +1.202.508.8093
Facsimile: +1.202.661.7484
todd.stenerson@aoshearman.com

ZAUSMER, P.C.

By: s/ Mark J. Zausmer
Mark J. Zausmer (P31721)
Michael A. Schwartz (P74361)
Nathan S. Scherbarth (P75647)
Jason M. Schneider (P79296)
32255 Northwestern Hwy., Ste. 225
Farmington Hills, MI 48334
Telephone: +1.248.851.4111
Facsimile: +1.248.851.0100
mzausmer@zausmer.com
mschwartz@zausmer.com
nscherbarth@zausmer.com
jschneider@zausmer.com

Dated: August 24, 2026

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| TIARA YACHTS, INC., | |
| Plaintiff, | Civil Action No.: 1:22-cv-603 |
| v. | Judge: Hon. Robert J. Jonker |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | Magistrate Judge: Hon. Ray Kent |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

**BRIEF IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER PROHIBITING TWO DEPOSITIONS NOTICED BY PLAINTIFF**

***EXPEDITED CONSIDERATION REQUESTED***

**CONCISE STATEMENT OF ISSUE PRESENTED**

Should the Court enter a protective order prohibiting the depositions of two individuals whom Plaintiff elected to depose based on their personal knowledge related to claims that the parties agree have nominal value?

**BCBSM Says:** Yes

**Plaintiff Says:** No

## I. INTRODUCTION

Events over the last several days have exposed the fact that Plaintiff's Tiara Yachts, Inc,'s counsel is attempting to use the resources of this Court in an improper manner that has nothing to do with prosecuting this case. Rather, Plaintiff's counsel is focused on wasting the Court's resources to unearth evidence that will allow it to seek other business opportunities that are unrelated to this case. Plaintiff's counsel has a history of this type of activity. Indeed, their previous efforts at misusing judicial resources went as far as suing the United States Department of Labor to obtain BCBSM customer information. *Varnum LLP v. United States Dep't of Lab.*, No. 1:18-cv-1156, 2021 WL 1387773 (W.D. Mich. Mar. 15, 2021). Judge Neff appropriately prevented Plaintiff's counsel's business-generating scheme in that case.

In this case, Plaintiff's counsel has been engaged in a blatant fishing expedition from the beginning. The Court recognized this early on when it reduced the number of allowable Requests for Production from the 63 that Plaintiff originally served to a total of 30. Plaintiff also recently filed a motion to compel seeking the immediate production of 1.8 million documents pulled from search terms that are facially overbroad. It then filed *another* motion to compel—which has yet to be fully briefed—that facially misrepresents several of BCBSM's discovery positions.

Now, Plaintiff's counsel has chosen to spurn the Court's efforts at resolving a $21,000 portion of this case so they can move forward with two depositions for which the relevance was based on that portion of the case. The proposed depositions that are scheduled for early this week, just like other discovery propounded in this matter, are manifestly disproportionate to the needs of this case. BCBSM has thus been forced to file this motion to avoid the undue burden that will result from those unnecessary depositions proceeding.

## II. BACKGROUND

On August 17, 2026, counsel for Plaintiff and BCBSM appeared at a hearing on several discovery motions that Plaintiff had filed. In its briefing on these motions, BCBSM had explained that Plaintiff's discovery demands—including its demand that BCBSM immediately produce 1.8 million documents without so much as a privilege review—were overbroad, irrelevant, and disproportionate to the needs of the case, including because the claims Plaintiff's discovery purportedly targeted are worth no more than $21,000. Magistrate Judge Ray Kent understood this and properly sought to determine the scope of the case at the inception of oral argument. Right away, Judge Kent asked counsel for Plaintiff whether, as represented in a response brief filed by BCBSM (ECF No. 178, PageID.2775-76), Plaintiff's claims are worth, at most, only around $21,000. This total is made up of about $5,000 for Plaintiff's "flip logic" claims and $16,000 for its claims related to BCBSM's Shared Savings Program ("SSP").

Plaintiff's counsel responded that he believes a third category makes the total value of Plaintiff's claims worth more than that, but admitted without qualification that the $21,000 amount is accurate for the claims related to "flip logic" and SSP. After further discussion on the record, Judge Kent asked counsel for both parties whether they would recommend settlement of those two claims for $21,000 to their respective clients. It was clear that at least part of Judge Kent's goal was to avoid discovery expenses related to *de minimis* claims. Counsel for both Plaintiff and BCBSM stated that they would make the settlement recommendation. BCBSM is in the process of obtaining the transcript of this hearing.

Consistent with that commitment, BCBSM's counsel made the settlement recommendation to BCBSM immediately after the August 17 hearing, and BCBSM has agreed to settle the flip logic and SSP claims for $21,000. To be clear, as is standard in the context of settling legal claims, this was an economic decision by BCBSM, not an admission of liability. BCBSM immediately

communicated its agreement to settle the flip logic and SSP claims to Plaintiff, and it sent a proposed release, which involves standard, neutrally drafted language:

> In consideration of the mutual promises and obligations set forth in this Agreement, Tiara Yachts, Inc. (formerly S2 Yachts, Inc.) ("Plaintiff"), on behalf of itself, its affiliates, and its health benefit plan (the "Plan"), hereby releases and forever discharges Blue Cross Blue Shield of Michigan ("BCBSM") and its officers, directors, employees, agents, affiliates, predecessors, successors, and assigns (collectively, the "Released Parties") from any and all claims, demands, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, obligations, liabilities, costs, expenses, and losses of every kind and nature whatsoever, whether at law or in equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, arising under or by virtue of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq. (including but not limited to claims under 29 U.S.C. §§ 1104, 1106, 1109, and 1132), federal common law, Michigan statutory law, Michigan common law, contract, tort, or any other federal, state, or local law, rule, regulation, or principle of law or equity, to the extent such claims arise out of or relate to: (a) BCBSM's use of "flip logic" in its claims-processing system, including all claims that BCBSM reimbursed nonparticipating out-of-state providers at or up to charge rather than at the applicable Host Blue, plan rate, negotiated rate, allowed or other amount, and (b) BCBSM's implementation and operation of its Shared Savings Program ("SSP"), including all claims that BCBSM's charging or retention of a percentage of avoided or recovered payments constituted a breach of fiduciary duty, prohibited transaction, or conflict of interest (collectively, the "Released Claims"). This release does not extend to, and Plaintiff expressly preserves, any and all claims, demands, actions, causes of action, damages, losses, and liabilities of every kind that are not Released Claims and arise out of or relate to BCBSM's alleged overpayment, improper payment, or misprocessing of claims from Plan assets independent of the flip logic or any incentive created by the SSP, including but not limited to claims based on unbundling, upcoding, medically unlikely edits, non-adherence to payment guidelines, missing or deficient claims data, or any other claims-processing errors or deficiencies, whether arising under ERISA, federal common law, Michigan statutory or common law, contract, tort, or otherwise (the "Preserved Claims").

Unlike BCBSM's expeditious and good-faith pursuit of the Court's settlement recommendation, on August 19, Plaintiff's counsel sent an email to BCBSM's counsel that concluded: "Finally, regarding Mark's request to discuss 'partial settlement,' we do not see a path to settling just part of the case." (**Exhibit A,** 08.19.26 Varnum Email). In other words, not only had

Plaintiff's counsel apparently not followed through with its on-the-record commitment to communicate the Court's settlement proposal to Plaintiff, but also decided to mispresent the nature of the settlement proposal by suggesting it was BCBSM's—rather than this Court's—idea.

After considerable back and forth, Plaintiff's counsel belatedly made the Court-mandated settlement recommendation to Plaintiff. Plaintiff's counsel then attempted to impose two conditions on the settlement: (1) that Plaintiff could reserve the right to seek attorney fees, which application would undoubtedly reflect multiples of the claim value; and (2) that BCBSM make a representation or warranty regarding the amount of the flip logic and SSP claims. (**Exhibit B,** 08.21.26 Varnum Email). Plaintiff's counsel's conditions thus further highlight that they were attempting to undermine the Court's recommendation to bring finality to two claims with *de minimis* value.

Concurrently with their settlement discussions, the parties were also discussing the propriety of three depositions that Plaintiff noticed for the week of August 24, 2026. Specifically, Plaintiff has noticed the depositions of (1) former BCBSM employee Dianne Malmgren for August 25; (2) BCBSM employee Robert Hopper for August 26; and (3) BCBSM employee Paul Ozdarski for August 27.[1]

While Ozdarski likely has knowledge relevant to Plaintiff's claims other than flip logic and SSP, it is clear that Plaintiff would not have noticed the depositions of Hopper and Malmgren had they not been involved in an internal workgroup related to the flip logic issue (which has been discussed at length in previous filings). There is support for this fact both in filings and discovery documents in this matter.

---

[1] BCBSM notes that Ms. Malmgren is retired. She has not worked for BCBSM in approximately the last five years.

For instance, Plaintiff's Complaint mentions both Hopper and Malmgren *only* in the context of a flip logic-related workgroup. *See generally* ECF No. 1. Any reference to these individuals in the text of the Complaint is limited to a description of Hopper's and Malmgren's roles in the workgroup. ECF No. 1, PageID.6. There are also two flip logic-related workgroup emails attached to Plaintiff's Complaint. Hopper appears in both, and Malmgren appears in one. ECF Nos. 1-2, 1-4. There are no other references in the Complaint or its exhibits to either individual. In a similar vein, Hopper is mentioned twice in Plaintiff's Requests for Production. (**Exhibit C,** BCBSM RFP Responses, at 18-19). He is again mentioned only in the context of a flip logic-related workgroup. Malmgren is not mentioned at all.

This seems to be consistent with the documents that have been produced in this matter. Based on BCBSM's review of both parties' produced documents, neither Hopper nor Malmgren appears in any relevant documents outside the flip logic-related workgroup context. In short, it is clear that Plaintiff's desire to depose both Hopper and Malmgren stems entirely from flip logic workgroup involvement.

BCBSM's counsel has asked Plaintiff's counsel why Plaintiff would want to depose Hopper and Malmgren despite the *de minimis* value of the only claim as to which they may have significant personal knowledge. Plaintiff's counsel has not identified *any* specific topics for the deposition, instead making only a general statement that the depositions are necessary for Plaintiff's other claims. (**Exhibit D,** 08.20.26 Email Correspondence).

## III. ANALYSIS

Under Fed. R. Civ. P. 26(c), "[a] party or any person from whom discovery is sought may move for a protective order" when there is good cause for protection "from annoyance, embarrassment, oppression, or undue burden or expense." The Court "has broad discretion to grant or deny protective orders." *Lewis v. St. Luke's Hosp. Ass'n*, 132 F.3d 33, 1997 WL 778410 (6th

Cir. 1997). This includes significant discretion to determine the type of protection to grant, which may include: "(A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; . . . [and] (D) forbidding inquiry into certain matters." Moreover, as the Sixth Circuit has explained, "[t]o justify restricting discovery, the harassment or oppression should be unreasonable, but 'discovery has limits and . . . these limits grow more formidable as the showing of need decreases.'" *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting 8A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure § 2036 (3d ed. 2012)).

Consistent with these principles, the Sixth Circuit has made clear that courts may consider the relevance of a prospective deponent's testimony in determining whether a protective order is appropriate. *Anwar v. Dow Chemical Co.*, 876 F.3d 841, 854 (2017); *see also McGowan v. United States*, 337 F.R.D. 495 (N.D. Ohio 2021). This aligns with the Federal Rules of Civil Procedure, which limit discovery only to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, . . . the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

It is clear from the record that Plaintiff noticed the depositions of Hopper and Malmgren to obtain information related to BCBSM's use of flip logic. The parties now agree that the value of that claim is around $5,000. Despite that fact, Plaintiff has refused to cancel the Hopper and Malmgren depositions, which will result in significant prejudice to BCBSM. It will be forced to incur substantial legal fees and travel expenses; Hopper himself is a current, high-level BCBSM employee who will be forced to divert his attention from important matters; and Malmgren, who

retired long ago, will need to travel for an unnecessary deposition. There is simply no need for the parties to expend significant resources on the depositions of Hopper and Malmgren when the parties have agreed on the *de minimis* value of the Plaintiff's flip logic claim. The cost of the depositions will be many multiples more than the value of the claim.

Moreover, to the extent either Hopper or Malmgren has personal knowledge related to other relevant topics, such as general operational information related to BCBSM's claims processing system, that information (if any) will be limited and duplicative. With the parties' agreement on the limited value of the flip logic issues, Ozdarski's deposition reduces the necessity of Hopper's and Malmgren's depositions to virtually zero. Both will be cumulative at best.

Plaintiff's counsel's rationale for proceeding with these depositions can only be understood in the context of the fishing expedition they have conducted both in this case and in prior matters related to BCBSM. Given that the depositions will add no value here, the only conclusion to reach is that Plaintiff's counsel intends to ask questions targeted at uncovering information unrelated to this case that will open the door to additional meritless lawsuits against BCBSM.

Particularly based on the "sliding prejudice scale" employed in the Sixth Circuit, the Federal Rules of Civil Procedure give courts the discretion to prohibit such wasteful resource expenditures. The issues have been rendered unimportant, there is a nominal amount in controversy, the depositions will not help resolve any significant issues in the case, and the burden will substantially outweigh any benefit. Thus, nearly all of Rule 26(b)(1)'s proportionality factors weigh in favor of prohibiting the Hopper and Malmgren depositions.

## IV. CONCLUSION

The Court cannot force Plaintiff's counsel to settle the flip logic and SSP aspects of this case. If Plaintiff's counsel wants to continue litigating these issues over $21,000, they are free to do so. But this Court has discretion to limit discovery in a manner that is proportionate to the size

and scope of the dispute. This starts with stopping the depositions of Hopper and Malmgren, whose relevance is to flip logic. The cost of conducting the depositions exceeds the entire value of those aspects of the case, and it is clear that Plaintiff's counsel has ulterior motives to take those depositions. All other discovery rulings should be focused on the proportionality issue as well.

Respectfully submitted,

ALLEN OVERY SHEARMAN STERLING US LLP

By: s/ Daniel Lewis
Daniel Lewis (Adm. in W.D. MI, NY Reg. 4084810)
Jeffrey D. Hoschander (Adm. in W.D. MI, NY Reg. 4496337)
599 Lexington Avenue
New York, NY 10022
Telephone: +1.212.848.4000
Facsimile: +1.202.508.8100
daniel.lewis@aoshearman.com
jeff.hoschander@aoshearman.com

Todd M. Stenerson (P51953)
1101 New York Avenue, NW
Washington, DC 20005
Telephone: +1.202.508.8093
Facsimile: +1.202.661.7484
todd.stenerson@aoshearman.com

ZAUSMER, P.C.

By: s/ Mark J. Zausmer
Mark J. Zausmer (P31721)
Michael A. Schwartz (P74361)
Nathan S. Scherbarth (P75647)
Jason M. Schneider (P79296)
32255 Northwestern Hwy., Ste. 225
Farmington Hills, MI 48334
Telephone: +1.248.851.4111
Facsimile: +1.248.851.0100
mzausmer@zausmer.com
mschwartz@zausmer.com
nscherbarth@zausmer.com
jschneider@zausmer.com

Dated: August 24, 2026

*Attorneys for Defendant*